O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN HERRERA, | ) Case No. ED CV 13-1734-SP |
| Plaintiff, | ) MEMORANDUM OPINION AND ) ORDER |
| v. | ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) ) |
| Defendant. | ) |

## I.

## **INTRODUCTION**

On September 30, 2013, plaintiff Martin Herrera filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of Disability Insurance Benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Plaintiff presents three disputed issues for decision: (1) whether the Administrative Law Judge's ("ALJ") assessment of plaintiff's residual functional capacity ("RFC") was supported by substantial evidence; (2) whether the ALJ properly assessed plaintiff's credibility; and (3) whether the ALJ erred at step five

1

by, inter alia, improperly deviating from the Dictionary of Occupational Titles ("DOT").

Having carefully studied the parties' written submissions, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ did not err.  First, the ALJ properly considered the physicians' opinions, and rendered an RFC determination that is supported by substantial evidence in the record.  Second, the ALJ gave clear and convincing reasons for discounting plaintiff's subjective complaints.  And third, the ALJ properly relied on the testimony of the vocational expert at step five.  Consequently, this court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was forty-two years old on his amended alleged disability onset date, has a third grade education.  AR 32, 38, 132.  He has past relevant work experience as a forklift operator and sheet metal production worker.  AR 43.

On August 18, 2010, plaintiff applied for DIB, alleging a disability onset date of March 1, 2003 due to spinal disc issues and back pain.  AR 106, 132, 148.  The alleged onset date was later amended at the hearing to December 1, 2006.  AR 32.  Plaintiff's claim was denied initially and upon reconsideration, after which plaintiff requested a hearing.  AR 51-60.

On March 9, 2012, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ.  AR 28-39.  Corianne Porter, a vocational expert ("VE"), also testified.  AR 39-48.

On March 26, 2012, the ALJ denied plaintiff's claim for benefits.  AR 11-21.  Applying the well known five-step sequential test, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity from December 2, 2006 (plaintiff's amended alleged onset date) to December 31, 2006 (plaintiff's

last date insured). AR 13.

At step two, the ALJ found plaintiff had the following severe impairments: lumbar spine degenerative disc disease, history of lumbar spine fusion surgery, and peripheral neuropathy. *Id*.

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's RFC,[1] and determined plaintiff could perform a full range of sedentary work, with the following limitations: occasionally balance, kneel, crouch, crawl, and climb; no more than rarely stoop; avoid concentrated exposure to extreme cold and vibration; limited to simple repetitive tasks due to possible medication side effects; and the requirement of a sit/stand option. AR 14.

At step four, the ALJ found plaintiff was unable to return to his past relevant work. AR 19.

At step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, including hand bander, table worker, production assembly of artificial flowers, and button assembler. AR 19-20. Consequently, the ALJ found plaintiff not disabled as defined in the Social Security Act. AR 20.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. AR 1-3, 6-7. The ALJ's decision stands as the

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Commissioner must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. The ALJ's RFC Determination Was Supported by Substantial Evidence

Plaintiff first contends that the ALJ's RFC determination is inconsistent with the objective medical record. *See* Pl. Mem. at 3-9. In determining plaintiff's RFC, the ALJ had to properly evaluate and consider both the medical opinions of record and plaintiff's subjective complaints. The court finds the ALJ did so, and that the RFC determination was supported by substantial evidence.

#### 1. The ALJ Properly Evaluated the Medical Opinions

In evaluating medical opinions, Ninth Circuit case law and Social Security regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *see also* 20 C.F.R. § 404.1527(c) (2012) (prescribing the respective weight to be given the opinions of treating sources and examining sources). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830 (citation omitted); *accord Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003). This is so because a treatment provider "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (citation omitted). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830 (citations omitted).

Where the treating physician's "opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Benton*, 331 F.3d at 1036; *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)

("While the ALJ may disregard the opinion of a treating physician, whether or not controverted, the ALJ may reject an *uncontroverted* opinion of a treating physician only for clear and convincing reasons." (citation omitted)). "Even if the treating doctor's opinion is contradicted by another doctor, the [ALJ] may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record for doing so." *Lester*, 81 F.3d at 830 (internal quotation marks and citation omitted); *accord Reddick*, 157 F.3d at 725. The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal quotation marks and citation omitted).

      Plaintiff attacks the ALJ's evaluation of the physicians' opinion in this case in three respects. First, he argues the ALJ should not have given great weight to the opinions of Dr. K.R. Mauro, a state agency consultant, since Dr. Mauro has no apparent specialization and only reviewed plaintiff's records five years after the date last insured. Pl. Mem. at 4. But regardless of whether Dr. Mauro has a particular specialization, he is a state agency medical consultant. As such, as the ALJ noted, Dr. Mauro's opinion was properly considered in determining plaintiff's RFC. *See* AR 18, 20 C.F.R. § 404.1527(e)(2)(I). Further, although Dr. Mauro did not review plaintiff's medical records until 2011, the records Dr. Mauro reviewed and cited were from 2006 and 2007 and earlier. *See* AR 287-88.

      Second, plaintiff attacks the ALJ's rejection of portions of the opinion of Dr. Donald Kim, an examining physician. Pl. Mem. at 5. In evaluating the medical evidence of record, the ALJ accorded "some weight" to Dr. Kim. AR 18. The ALJ noted that as Dr Kim examined plaintiff solely in the context of plaintiff's California Workers' Compensation claim, the overall relevance and credibility of his determination was in question. *Id*. This was a proper consideration in evaluating Dr. Kim's opinion. *See Desrosiers v. Sec'y of Health*

*& Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).

The ALJ found Dr. Kim's opinion that plaintiff was precluded from heavy work was consistent with the record as a whole. AR 18. But the ALJ rejected the portion of Dr. Kim's opinion finding a fifty percent loss of plaintiff's pre-injury capacity for bending, stooping, lifting, pushing, and climbing, finding this opinion was not supported by plaintiff's treatment notes. *Id*. The ALJ specifically noted that Dr. Kim performed a March 2006 qualified medical exam and observed: a smooth and steady gait with no abnormalities, normal walking, a negative straight leg raise test, no atrophy or restricted range of motion on plaintiff's lower extremities, and no abnormalities related to plaintiff's 2005 spinal fusion. AR 18, 202-04. Thus, the ALJ gave a specific and legitimate reason supported by substantial evidence for rejecting a portion of Dr. Kim's opinion.

Finally, plaintiff argues the ALJ erred in giving no weight to the opinion of treating physician Dr. Rick Pospisil, as plaintiff disagrees with the ALJ that the medical evidence is inconsistent with Dr. Pospisil's opinion. Pl. Mem. at 5-9. The ALJ accorded no weight to Dr. Pospisil who opined plaintiff was to remain off work from December 2006 through July 2007. AR 18, 259-65. The ALJ noted that this assessment contradicted Dr. Pospisil's own treatment records, which noted plaintiff was improving with his home exercise program and medication during this time. AR 18; *see* AR 259, 264-65. Consequently, the ALJ found Dr. Pospisil's assertion that plaintiff had lost seventy-five percent of his previous capacity is contradicted by his own treatment notes, as well as the medical evidence of several negative straight leg raising tests. AR 18. This was a proper basis to reject Dr. Pospisil's opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ may properly reject a physician's opinion if plaintiff has subsequently improved, but the physician's original opinion remains unchanged).

Accordingly, the ALJ properly noted the objective evidence of record supported Dr. Mauro's and Dr. Kim's assessments in part. And as Dr. Pospisil's

7

assessment contradicts these opinions and other medical evidence, and is contradicted by his own treatment notes, the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting it.

### 2. The ALJ Properly Determined Plaintiff's RFC

Plaintiff argues the ALJ's RFC finding that plaintiff has the capacity for sedentary work with limitations is not supported by the medical record, and that the ALJ erred in not articulating the basis for this RFC determination.[2] *See* Pl. Mem. at 3-9. The court disagrees.

In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including medical records, lay evidence, and the effects of symptoms (including pain) that are reasonably attributed to a medically determinable impairment. *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 883 (9th Cir. 2006); *see* Social Security Ruling ("SSR") 96-5p,[3] 1996 WL 374183, at *5 (July 2, 1996); 20 C.F.R. § 404.1545(a)(3) (2012) (a claimant's assessed RFC is based upon all the relevant evidence in the case record). Here, as discussed above, the ALJ properly assessed the medical evidence of record, giving great weight to Dr. Mauro, some weight to Dr. Kim, and no weight to Dr. Pospisil.

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567 and 416.967.

[3] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

Plaintiff's primary attack on the ALJ's RFC determination is that the ALJ inexplicably adopted a more restrictive RFC than would be supported by either Dr. Mauro's or Dr. Kim's opinions, and that is more consistent with the rejected opinion of Dr. Pospisil. It is true that normally an ALJ must explain deviations from an opinion he or she credits. *See Magallanes*, 881 F.2d at 753-54 (an ALJ may adopt or accept all, some, or none of a physician's opinion but must explain why); *see also Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). But this is not a situation in which an ALJ credited a physician's opinion but then reached a less restrictive RFC. To the contrary, the ALJ made a more restrictive RFC determination to the benefit of plaintiff. *See, e.g., Chavez v. Astrue*, 2011 WL 3420848, at *2-*3 (C.D. Cal. Aug. 4, 2011) (ALJ's RFC determination was consistent and arguably more restrictive than the less credited opinion and thus any error was harmless); *Nuno v. Astrue*, 2010 WL 4553440, at *4 (C.D. Cal. Nov. 3, 2010) (ALJ erred on plaintiff's side in finding a more restrictive RFC than the purportedly improperly rejected opinion); *Lasswell v. Astrue*, 2008 WL 4330273, at *3 (C.D. Cal. 2008 Sept. 19, 2008) (ALJ did not err because he adopted the physician's limitations and made them effectively more restrictive). Thus, any error in this regard was harmless.

Moreover, plaintiff is simply incorrect in asserting that the ALJ made a more restrictive RFC determination without explanation. First, the ALJ's RFC determination was largely consistent with Dr. Mauro's RFC opinion, although more restrictive in certain respects. *See* AR 14, 18, 283-85. Second, the ALJ explained that, although he found parts of Dr. Kim's opinion consistent with the record, he imposed certain additional limitations in determining plaintiff's RFC because he "generously considered the claimant's subjective complaints." AR 18.

In sum, the ALJ properly assessed the limitations opined by Drs. Mauro and Kim, "generously" considered plaintiff's subjective complaints, and arrived at an

9

RFC that is supported by substantial evidence in the record. To the extent the ALJ may not have fully explained the additional restrictions contained in his RFC determination, such additional restrictions only benefitted plaintiff, making any error in that regard harmless.

**B.     The ALJ Properly Discounted Plaintiff's Subjective Complaints**

As noted above, the ALJ considered plaintiff's subjective complaints in arriving at his RFC. But the ALJ also discounted plaintiff's subjective complaints of complete disability. AR 15. Plaintiff contends that the ALJ erred in doing so. Pl. Mem. at 10-15.

The ALJ must make specific credibility findings, supported by the record. SSR 96-7p. To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). Second, if there is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281(9th Cir. 1996); *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may consider several factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation such as a claimant's reputation for lying; (2) the failure to seek treatment or follow a prescribed course of treatment; and (3) a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47.

Here, the ALJ discounted plaintiff's subjective complaints because: (1) he has not received the type of treatment expected for a totally disabled individual; (2) plaintiff himself reported improvement, and only rated his pain level as three

10

out of ten; (3) he indicated in 2007 he was going to look for work; (4) his daily activities are inconsistent with his claimed levels of pain; and (5) the objective medical evidence does not support the severity of his complaints. AR 15, 19.

First, the ALJ found plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual." AR 15. Evidence of conservative treatment constitutes a clear and convincing reason for discounting plaintiff's subjective complaints. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("evidence of 'conservative treatment" is sufficient to discount a claimant's testimony regarding severity of an impairment"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). Plaintiff correctly notes that between 2003 and 2005, he received nerve root blocks, ultimately undergoing surgery for his lower back, and that, during this time, plaintiff's treatment was not conservative. Pl. Mem. at 11. But between 2006 and 2007, plaintiff only underwent home therapy exercises and medications, which constitute conservative treatment. AR 199, 259, 264-65; *see Tommasetti v. Astrue*, 533 F.3d 1035, 1040. (9th Cir. 2008). Notably, however, Dr. Pospisil recommended plaintiff be considered for facet or selective nerve root block or epidural treatment, but his insurance carrier did not authorize such treatments. AR 259, 264-65. "[A] disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Thus, while the ALJ here was not wrong about the conservative nature of plaintiff's treatment, given the role the insurance company played in determining that treatment, this is not a convincing reason for discounting plaintiff's subjective complaints.

Second, the ALJ noted plaintiff "reported improvement with his home exercise program and medication," and rated his pain level three out of ten. AR 15; *see* AR 199, 259, 264-65. Improvement in plaintiff's medical condition is a clear and convincing reason for discounting his subjective complaints of total

11

disability. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999) (plaintiff's medical improvement is a sufficient ground to discount his claims of total disability). Plaintiff's own statements of improvement and of a relatively moderate pain level contradicted his claims of total disability. This was a clear and convincing reason to discount plaintiff's subjective complaints.

Third, the ALJ noted that on July 3, 2007, plaintiff "indicated he was going to look for work within the restrictions provided him due to financial reasons." AR 15; *see* AR 265. The ALJ recognized this attempt to work was primarily motivated by financial desperation, and for this reason alone, this is a dubious reason to discount plaintiff's complaints. Further, nothing in the record suggests plaintiff was successful in this pursuit. A willingness to work, or a brief, unsuccessful attempt to work, is not a clear and convincing reasons to discount plaintiff's subjective complaints. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007) (brief, unsuccessful attempts to work are not inconsistent with disability). Consequently, this was not a clear and convincing reason.

Fourth, the ALJ found plaintiff "described activities of daily living, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." AR 15. The ALJ noted plaintiff's ability to: cook, perform personal grooming activities, shop, drive, read, attend church, take walks, and visit with relatives and friends." *Id*. Given plaintiff claims a total disability and an inability to stand or walk for long periods of time, plaintiff's daily activities, particularly taking walks, contradict his claimed limitations.

Fifth, the ALJ found plaintiff's allegations regarding the severity of his symptoms were greater than expected in light of the objective medical evidence. AR 19. An ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain," but lack of objective medical evidence may be one factor used to evaluate credibility. *Bunnell*, 947 F.2d at 345; *see also Rollins*, 261 F.3d at 856. Here, as

noted above, plaintiff's treatment notes reveal improvement in his medical condition. AR 199, 259, 264-65. Plaintiff's improvement with his conservative treatment of home exercises and medication, and his low self reported level of pain indicate that his subjective complaints are greater than expected in light of the objective evidence. Furthermore, Dr. Kim's qualified medical exam revealed no complications with plaintiff's 2005 spinal fusion, and negative electrodiagnostic findings of plaintiff's lower extremities. AR 209, 250. Neither Dr. Kim's nor Dr. Mauro's opinions supports a finding of total disability as plaintiff alleges. Accordingly, this was a clear and convincing reason to discount plaintiff's subjective complaints.

In sum, not all of the reasons the ALJ gave for discounting plaintiff's credibility were clear and convincing. But such error is harmless, as the ALJ had sufficient other clear and convincing reasons to discredit plaintiff, including his self-reported medical improvement and inconsistent daily activities. *See Batson*, 359 F.3d at 1195-97 (ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but such error was harmless because the ALJ's remaining reasons and ultimate credibility determination were adequately supported by substantial evidence in the record). The ALJ's error would not "negate the validity" of his ultimate credibility finding, and the ALJ's decision remains "legally valid, despite such error." *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (internal quotation marks and citation omitted).

C.      **The ALJ's Did Not Err at Step Five**

Plaintiff contends that the ALJ erred at step five. Pl. Mem. at 16-19. Specifically, plaintiff contends that: (1) the ALJ failed to properly address the eroding effect of a sit/stand option on the number of existing jobs plaintiff can perform; (2) the ALJ erred in accepting the VE's testimony that contradicted the Dictionary of Occupational Titles without explanation by failing to account for plaintiff's illiteracy and inability to communicate in English; and (3) the total

number of jobs in the national economy that plaintiff can perform as determined by the ALJ is 27,300, which is not a "significant number." *Id*.

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1512(g), 416.912(g).

ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. §§ 404.1566(d)(1) (DOT is source of reliable job information), 416.966(d)(1) (same). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi*, 486 F.3d at 1152-53 (citing SSR 00-4p). But failure to so inquire can be deemed harmless error where there is no apparent conflict or the VE provides sufficient support to justify deviation from the DOT. *Id.* at 1154 n.19. In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." *Id.* at 1153 (citing *Johnson*, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

### 1. Sit/Stand Option

First, plaintiff contends the ALJ erred in not properly considering the effect

of plaintiff's sit/stand option in his RFC. Pl. Mem. at 16. The ALJ posed the requirement that plaintiff have a sit/stand option in his hypothetical to the VE. AR 45. The VE identified four jobs plaintiff could perform with this and the other limitations posed by the ALJ. AR 45-46. The VE also testified that her testimony was consistent with the DOT. AR 46-47. Plaintiff nonetheless contends that the VE deviated from the DOT without explanation in testifying plaintiff could perform the jobs identified even with the limitation of a sit/stand option.

In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435. Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997). With respect to the jobs identified by the VE here, the DOT is silent as to whether they can accommodate a sit/stand option. *See* DOT 920.687-030 (hand bander); DOT 739.687-182 (table worker); DOT 734.687.018 (button assembler).[4] But the VE's testimony supplemented the DOT in this regard.

In testifying to which jobs plaintiff can perform with the limitations posed by the ALJ, the VE specifically stated she was "contemplating sitting and standing at will," and that, as to the hand bander and table worker jobs she had identified

---

[4] In addition to the three jobs listed here, the VE also identified a fourth job, "production assembly of artificial flowers, [DOT] 725.684-018." AR 46. Although not raised by either party, the DOT job number listed by the VE, 725.684-018, is that of the position of stem mounter – as in forming the mounts for electric light bulbs – not production assembly of artificial flowers. Presumably this was simply a matter of an error in by the VE in reciting the DOT number or by the court reporter in transcribing the number. In any event, there appears to be no dispute that this position, like the other positions identified, is silent as to whether it can accommodate a sit/stand option.

1  before the ALJ included the sit/stand option, with the sit/stand option there would
2  be no erosion in the number of positions. AR 45-46. She then went on to identify
3  two more jobs plaintiff could perform with that added limitation. AR 46. The VE
4  thus rendered an expert opinion on the lack of occupational erosion caused by the
5  sit/stand option as to the hand bander and table worker jobs. While the VE did not
6  detail the reasons for this determination, she was not required to. *See Bayliss v.*
7  *Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise
8  provides the necessary foundation for his or her testimony."). Accordingly, the
9  ALJ met his burden for obtaining persuasive evidence to support the deviation.
10 *See Johnson*, 60 F.3d at 1436 (upholding ALJ's determination that claimant
11 limited to sedentary work could nonetheless perform jobs classified as light by
12 DOT where VE testified those jobs in fact have sit/stand options and demands that
13 do not exceed claimant's abilities as found by ALJ).

      **2.**     **Plaintiff's Illiteracy in English**

15      Plaintiff contends that the ALJ erred in relying on DOT occupations that
16 require a language skill beyond plaintiff's ability. Pl. Mem. at 17. Plaintiff is a
17 native Spanish speaker with little to no ability to communicate in English.
18 Plaintiff contends that as he is illiterate in English, he lacks the ability to perform
19 the occupations identified by the VE and adopted by the ALJ, as all of those
20 occupations require a basic ability to read, write, and speak. *Id*. Without citing
21 any authority, plaintiff asserts: "Presumably, these language skill requirements are
22 in the English language." *Id.* Plaintiff's presumption that English language skills
23 are required is contrary to the Social Security regulations.

24      All of the positions identified by the VE at the hearing as positions plaintiff
25 could perform require language skills of GED-L-1. *See* DOT 920.687-030 (hand

bander); DOT 739.687-182 (table worker); DOT 734.687.018 (button assembler).[5] This is the lowest level of language development contemplated by the DOT. DOT, App. C – Components of the Definition Trailer, 1991 WL 688702; *see Donahue v. Barnhart*, 279 F.3d 441, 445 (7th Cir. 2002) (noting that every job in the DOT requires at least this basic literacy level). Nothing in the level one language skills description requires that such skills be in English rather than some other language. To read such a requirement into the DOT would effectively mean that every non-English-speaking claimant is per se disabled. This is not the law. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(I) ("While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope . . . at the unskilled level, literacy or ability to communicate in English has the least significance. . . . . Thus, the functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18-44 even if they are illiterate or unable to communicate in English."). As another court found:

> [T]o find that Plaintiff could not perform her past relevant work as a factory helper because it requires level-one language development . . . and she does not speak or understand English would be to find that every illiterate or non-English-speaking plaintiff is per se disabled regardless of their work history. Such a result is both "illogical and in direct contradiction to Social Security regulations."

*Landeros v. Astrue*, 2012 WL 2700384, at *5 (C.D. Cal. Jul. 6, 2012) (quoting *Meza v. Astrue*, 2011 WL 11499, at *21 (N.D. Cal. Jan. 4, 2011)); *see also Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("A claimant is not per se disabled if he or she is illiterate.").

---

[5] As discussed above in footnote four, the DOT number listed by the VE for the production assembly of artificial flowers job was incorrect. But there is no dispute that this job too required language skills at GED-L-1.

Although plaintiff's inability to communicate in English did not make him per se disabled, it was nonetheless a factor the ALJ had to consider. "The ability to communicate is an important skill to be considered when determining what jobs are available to a claimant." *Pinto*, 249 F.3d at 846. As with any other deviation, the ALJ must account for any deviation between the language requirement of the DOT and plaintiff's language abilities. *See id.* at 847 ("[I]n order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation."). The ALJ met his burden here.

The ALJ specifically asked the VE to "identify other jobs within those limitations that a younger individual that is either illiterate . . . and unable to effectively communicate in English could perform," and the VE did so. AR 45-46. The VE further stated that her testimony was consistent with the DOT. AR 46-47. As just discussed, the DOT does not specify that language level one skills be in English, so there is no explicit deviation from the DOT. Further, as with the sit/stand option, the VE considered plaintiff's English limitations in rendering her expert opinion regarding the jobs plaintiff could perform. Thus, the ALJ met his obligation to investigate potential conflicts with the DOT, and his reliance on the VE's testimony was proper.

### 3. Work Existing in Significant Numbers

Plaintiff contends that the occupations identified by the ALJ do not exist in significant numbers in the national or regional economies. Pl. Mem. at 19. The VE testified that the occupations of hand bander, table worker, production assembly of artificial flowers, and button assembler combine to constitute 27,300 jobs nationally and 1,950 jobs regionally.[6] AR 45-46. Plaintiff contends this does

---

[6] As discussed in footnote four above, there was an error in the VE's identification of the DOT number for the production assembly of artificial flowers

not constitute a significant number of positions.

There is no bright line rule in the Ninth Circuit for determining what constitutes a "significant number" of jobs. *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528 (9th Cir. 2014). Instead, this is a question of fact left to the ALJ to determine. *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986). The ALJ's finding here that 27,300 jobs nationally is a significant number is consistent with what other courts have held. *See Gutierrez*, 740 F.3d at 529 (upholding ALJ's finding that 25,000 jobs nationally is a significant number); *see also Barker v. Sec'y of Health & Human Servs.*, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (citing approvingly decisions that have found several hundred jobs in local economy "significant"). Therefore, the ALJ's determination that there are "jobs that exist in significant numbers in the national economy that plaintiff can perform" is supported by substantial evidence.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

Dated: July 21, 2014



_____
SHERI PYM
UNITED STATES MAGISTRATE JUDGE

---

job. Although plaintiff does not challenge the inclusion of the number of jobs in this position in the combined total, the court notes that even if one were to subtract the number of positions the VE testified exist in production assembly of artificial flowers, it would not materially alter the ALJ's analysis, for the VE did not testify to very many such jobs existing. For the remaining three jobs, the VE testified a total of 1,760 positions exist in the regional economy, and a total of 24,300 positions exist in the national economy. AR 45-46.